FILED
2013 Mar-12  AM 08:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **LEONARD CHARLES HICKS, JR.,** } | |
| **and REBECCA DIANE WRIGHT** } | |
| **HICKS,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| **v.** } | **Case No.:  2:11-CV-4107-RDP** |
| } | |
| **CITY OF  ALABASTER, ALABAMA** } | |
| **and STANLEY OLIVER, SR.,** } | |
| } | |
| **Defendants.** } | |

**MEMORANDUM OPINION**

Before the court is Defendant City of Alabaster, Alabama's ("Defendant" or "City of Alabaster") Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. #43), filed on October 15, 2012.[1]  The Motion (Doc. #43) has been fully briefed.  (Docs. #43, 43-1, 45, 47).  For the reasons discussed below, Defendant's Motion to Dismiss (Doc. #43) is due to be granted in part and denied in part.

**I.      BACKGROUND**

Plaintiffs initiated this lawsuit on December 6, 2011 by filing a Complaint against the City of Alabaster alleging various claims under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, *et seq.*, including racial discrimination, racially hostile work environment, and retaliation.  (Doc. #1).  On March 29, 2012, the court dismissed Plaintiffs' action with prejudice after Plaintiffs failed to respond to Defendant's Motion to Dismiss.  (Doc. #6).  One day later,

---

[1] To be clear, this memorandum opinion only addresses Defendant City of Alabaster's Motion to Dismiss.  Any findings or conclusions reached herein do not apply to Defendant Stanley Oliver, who has filed a separate Motion to Dismiss.  Defendant Oliver's Motion to Dismiss (Doc. #46) will be considered in a separate memorandum opinion and order.

Plaintiffs filed a Motion to Reinstate (Doc. #7), and on April 2, 2012, the court granted that motion. (Doc. #9).  On April 8, 2012, Plaintiffs responded to Defendant's  Motion to Dismiss (Doc. #10), Defendant filed a reply (Doc. #11), and Plaintiffs filed a Motion for Judgement on the Pleadings (Doc. #12).  On April 25, 2012, the court denied Plaintiffs' Motion for Judgment on the Pleadings. (Doc. #14).  According to the Scheduling Order (Doc. #19) entered on May 22, 2012, Plaintiffs were to amend their pleadings on or before July 25, 2012.  On July 25, Plaintiff's filed a Motion for Leave to Amend Complaint. (Doc. #22).  On July 26, 2012, the court granted Plaintiffs' Motion (Doc. #22) and also terminated Defendant's Motion to Dismiss (Doc. #4) as the Amended Complaint would serve as the new operative pleading.  (Doc. #23).

Plaintiffs filed an Amended Complaint on July 27, 2012.  (Doc. #24).  Although not reflected in the caption, Plaintiffs added Alabaster Police Chief Stanley Oliver ("Oliver") as a Defendant. (*See* Doc. #24). The City of Alabaster filed another Motion to Dismiss (Doc. #25) and Motion to Strike (Doc. #26) on August 10, 2012.  Also on August 10, 2012, the court issued an order directing Plaintiffs to show cause why the action should not be dismissed against Defendant Oliver for failure to perfect service.  (Doc. #28).  Plaintiffs failed to show cause within the time frame set by the court but subsequently filed a response (Doc. #34) on September 4, 2012,  after a call from a member of chambers staff.

On September 11, 2012, Defendant Oliver filed a Motion to Strike Plaintiffs' Statement Regarding Service of Process as untimely.  (Doc. #35).  This same day, Plaintiffs filed a Motion for Leave to Perfect Service on Defendant Oliver.  (Doc. #36).  After a telephone conference on September 12, 2012, the court granted Plaintiffs' Motion (Doc. #36) and also instructed Plaintiffs to file a Second Amended Complaint to correct "shot gun" pleading deficiencies.  (Doc. #38).

2

Because the Second Amended Complaint would serve as the new operative pleading, the court also rendered moot and denied without prejudice Defendant City of Alabaster's Motion to Dismiss (Doc. #25) and Motion to Strike. (Doc. #26).

On October 1, 2012, Plaintiffs filed a Second Amended Complaint, which is the subject of this Motion to Dismiss. (Doc. #43).[2]  Plaintiffs' Second Amended Complaint asserts claims against Defendant City of Alabaster and Defendant Oliver.

## II.   FACTUAL ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

Plaintiffs are a biracial couple and parents of one child. (Doc. #39 at ¶22).  They met while employed with the Alabaster Police Department. (*Id.*).  Plaintiff Rebecca Hicks (Caucasian) began her employment as a dispatcher on July 1, 2006. (*Id.*).  Plaintiff Leonard Hicks (African-American) began his employment as a patrol officer in February 2006. (*Id.*).  During his employment with the Alabaster Police Department, Plaintiff Leonard Hicks sought training and educational opportunities that were routinely provided to Caucasian employees. (*Id.* at ¶86).  Oliver denied these requests without providing Plaintiff Leonard Hicks with a reason. (*Id.* at ¶87).

---

[2]A review of Plaintiffs' Second Amended Complaint demonstrates that Plaintiffs did not entirely comply with the court's September 12, 2012 order to correct "shot-gun" pleading deficiencies.  It is still not entirely clear from Plaintiffs' Second Amended Complaint which counts to relief are plead against a specific Defendant. Further, Plaintiffs' Second Amended Complaint contains new factual allegations and new counts to relief.  Specifically, Plaintiffs added claims against Defendant City of Alabaster and Defendant Oliver for intentional infliction of emotional distress, breach of duty of good fait and fair dealing, and fraud.  Moreover, Plaintiffs assert a number of factual allegations that are simply irrelevant to their claims.  Although Plaintiffs' Second Amended Complaint does not comply entirely with the court's September 12, 2012 order and although it contains new factual allegations and claims filed without leave and outside the time for amendment of the pleadings, the court addresses below whether Plaintiff's claims satisfy the pleading standards and does so in an attempt to ensure that this lawsuit, originally filed in December 2011, proceeds more expeditiously than it has to this point.  The preferred course would have been for Plaintiffs to have sought leave before adding factual allegations and claims; however, had Plaintiffs done so, the court likely would have granted such a motion. Under Federal Rule of Civil Procedure 15(a), leave to amend is to be freely given when justice requires.  *See* Fed. R. Civ. P. 15(a).  The court has already addressed Defendant City of Alabaster's Motion to Strike Second Amended Complaint (Doc. #44) in a separate order.  (*See* Doc. #60).

On September 23, 2009, Oliver met with Plaintiffs in his office and asked them whether they had been involved in a personal relationship while employed with the Alabaster Police Department. (*Id.* at ¶ 25). Plaintiffs admitted they had been involved in a personal relationship and that Plaintiff Rebecca Hicks was pregnant and had applied for maternity leave. (*Id.* at ¶26). Immediately after this meeting, Oliver told Plaintiff Rebecca Hicks that City Attorney, Greg Morris ("Morris") had instructed Oliver to terminate her immediately. (*Id.* at ¶27). Oliver threatened loss of insurance coverage for Plaintiff Rebecca Hicks and her child, and Plaintiff Rebecca Hicks then believed she could tender a resignation letter. (*Id.* at ¶28). Oliver also told Plaintiff Leonard Hicks that Morris had instructed Oliver to terminate him immediately, either by firing him or forcing his resignation. (*Id.* at ¶30). Oliver discussed the Standard Operating Procedures ("SOP") Manual with Plaintiffs. (*Id.* at ¶28). The SOP Manual contained a non-fraternization policy and Oliver told Plaintiffs he would be in contact with them at a later time after speaking with Morris. (*Id.*).

On September 24, 2009, Plaintiffs submitted letters of resignation according to instructions given to them by Oliver, and on September 25, 2009, Plaintiff Leonard Hicks's position with the Alabaster Police Department was posted on its website. (*Id.* at ¶32). Plaintiffs allege that they withdrew their letters of resignation after learning other similarly situated Caucasian employees were treated differently than they. (*Id.* at ¶33). On October 7, 2009, Plaintiffs attended a meeting with Morris and Clark Boyd ("Boyd"), the City's Human Resource Director. (*Id.* at ¶34). At the meeting, Morris told Plaintiffs that they "had gotten [themselves] into this mess" and that they should submit a fair proposal to resolve the issue. (*Id.* at ¶35). During the meeting, Morris referred to Plaintiffs as "kids" until they objected to that term. (*Id.* at ¶36). Plaintiffs allege other similarly situated employees were not subject to this type of treatment during conversations with Morris. (*Id.*).

Plaintiffs also allege that prior to September 23, 2009, there were at least two other instances where Caucasian employees of the Alabaster Police Department established personal relationships and were eventually married while employed.  (*Id.* at ¶70).  In one instance, Plaintiffs allege no disciplinary action was taken, and in the other Plaintiffs claim a mild reprimand was given to one of the two employees.  (*Id.* at ¶73).

Morris told Plaintiffs that he thought a good proposal would be for Plaintiff Rebecca Hicks to resign following her maternity leave and for Plaintiff Leonard Hicks to continue his employment on active duty with the Alabaster Police Department.  (*Id.* at ¶37).  Plaintiff Rebecca Hicks told Morris that proposal had not been suggested by Oliver but that if Morris believed it was acceptable, Plaintiffs would submit such a proposal immediately.  (*Id.* at ¶38).  During the October 7, 2009 meeting, Morris discouraged Plaintiffs from consulting with an attorney and directed them to wait until the following Tuesday to submit the suggested proposal.  (*Id.* at ¶¶40, 41).

Following the meeting, Boyd called Plaintiffs and told them Morris wanted the proposal submitted immediately.  (*Id.* at ¶42).  Plaintiffs returned to Boyd's office and prepared a written proposal to Boyd that provided that one of Plaintiffs would resign at the end of Plaintiff Rebecca Hicks's maternity leave and one Plaintiff would continue his or her employment. (*Id.*).  Several hours later, Plaintiff Leonard Hicks received a letter from Oliver stating he had been placed on administrative leave for five days pending an investigation of his alleged violation of the City of Alabaster's sexual harassment and non-fraternization policies.  (*Id.* at ¶44).

On October 13, 2009, Boyd requested a meeting with Plaintiffs, Lieutenant Jeff Anthony ("Anthony"), Morris, and Morris's partner Jeff Brumlow ("Brumlow"), the City of Alabaster Prosecutor.  (*Id.* at ¶50).  Boyd directed Plaintiffs to report to his office immediately and without

5

counsel.  (*Id.* at ¶52).  Plaintiff Leonard Hicks was questioned for an hour and a half about his relationship with Plaintiff Rebecca Hicks.  (*Id.* at ¶54).  Plaintiff Rebecca Hicks was then questioned. (*Id.* at ¶58).  Morris told Plaintiffs he had digitally recorded the meeting.  (*Id.* at ¶59).  Plaintiffs allege other similarly situated Caucasian employees[3] were not subjected to such treatment under similar circumstances.  (*Id.* at ¶56).  Plaintiffs also allege similarly situated Caucasian couples were not subjected to the same internal affairs investigation.  (*Id.* at ¶57).

On October 16, 2009, Boyd called Plaintiff Leonard Hicks and told him there were letters from Oliver to Plaintiffs at Boyd's office.  (*Id.* at ¶60).  The letters informed Plaintiffs that, based on the internal affairs investigation, their requests to withdraw their letters of resignation were denied.  (*Id.* at ¶61). Following his termination, Plaintiff Leonard Hicks went to Boyd's office to return equipment and other items issued by the Alabaster Police Department.  (*Id.* at ¶62).  At that time, Plaintiff Leonard Hicks and Boyd discussed his right to appeal the decision to terminate his employment.  (*Id.* at ¶63).  Boyd told Plaintiff Leonard Hicks he could appeal the decision and also told him what to include in the document.  (*Id.* at ¶64).  Plaintiff Leonard Hicks typed the appeal notice in Boyd's office and submitted it as Boyd had instructed.  (*Id.* at ¶65).  Boyd told Plaintiff Leonard Hicks he would process his appeal and would contact him in the near future.  (*Id.* at ¶66). Plaintiff Leonard Hicks contacted Boyd several weeks later and Boyd told him his appeal had been denied.  (*Id.* at ¶¶67, 68).  Plaintiff Leonard Hicks did not receive any written notification regarding his appeal.  (*Id.* at ¶69).

At some point following Plaintiffs' terminations, Anthony sent a memorandum to all employees notifying them that Plaintiffs were no longer employed with the Alabaster Police

---

[3]In particular, Plaintiffs contend that Caucasian couples were treated more favorably.

Department.  (*Id.* at ¶92).  This memorandum instructed Alabaster Police Department employees "not to have anything to do with Plaintiffs" and in the event any employee did come into contact with Plaintiffs to report and record any conversation.  (*Id.* at ¶93).

Plaintiffs assert the following claims against the City of Alabaster in their Second Amended Complaint: (1) Plaintiff Rebecca Hicks's Title VII claim for racial discrimination; (2) Plaintiff Rebecca Hicks's Title VII claim for pregnancy discrimination; (3) Plaintiff Leonard Hicks's Title VII claim for a racially hostile work environment; (4) Plaintiff Leonard Hicks's Title VII claim for racial discrimination; (5) Plaintiff Leonard Hicks's Title VII retaliation claim; (6) Leonard Hicks Section 1983 claim for deprivation of property; (7) Plaintiff Leonard Hicks's Section 1983 claim for deprivation of liberty; (8) Plaintiff Rebecca Hicks's Section 1983 claim for deprivation of property; (9) Plaintiff Rebecca Hicks's Section 1983 claim for deprivation of liberty; (10) Plaintiff Leonard Hicks's Section 1981 claim for race and color discrimination; (11) Plaintiff Leonard Hicks's Section 1983 claim for right to equal protection; (12) Plaintiff Rebecca Hicks's Section 1983 claim for right to equal protection; (13) Plaintiff Leonard Hicks's Title VII claim for retaliatory termination; (14) Plaintiffs Rebecca and Leonard Hicks's claim for intentional infliction of emotional distress; (15) Plaintiffs Rebecca and Leonard Hicks's claim for breach of duty of good faith and fair dealing; (16) Plaintiffs Rebecca and Leonard Hicks's claim for fraud under Alabama Code § 6-5-101 and Alabama Code § 6-5-102.  Plaintiffs claim they have exhausted the administrative remedies for their Title VII claims.  (Doc. #39 at ¶¶9-13).  Plaintiff Leonard Hicks filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 20, 2009.  (*See* Doc. #4-2). Plaintiff Rebecca Hicks filed a charge of discrimination with the EEOC on March 17, 2010. (*See*

Doc. #4-3).  Plaintiffs received right to sue letters from the EEOC on October 7, 2011.  (Doc. #39 at ¶12).

In Defendant's brief supporting its Motion to Dismiss (Doc. #43-1), the City of Alabaster argues that Plaintiffs' Second Amended Complaint is due to be dismissed because it was filed outside the time frame set by this court for amending pleadings.[4]  Defendant also seeks dismissal of Plaintiffs' due process claims in Counts VI, VII, VII, and IX arguing Plaintiffs had adequate state law remedies available.  Additionally, Defendant argues Plaintiffs' Section 1983 claims in Counts VI, VII, VIII, IX, XI, and XII are barred by the statute of limitations.  Defendant seeks dismissal of Plaintiff Leonard Hicks's Title VII racially hostile work environment claim as outside the scope of the EEOC charge and investigation.  Defendant also asserts that Plaintiffs' state law claims are due to be dismissed because they are either barred by Alabama's two year statute of limitations and Alabama's notice of claim statutes or, alternatively, because they fail to state a claim.  Plaintiffs filed a responsive brief (Doc. #45) discussing some of Defendant's arguments in detail.  Defendant filed a reply (Doc. #47) reiterating its arguments for dismissal.

During a status conference with the parties on January 31, 2013, Plaintiffs agreed to abandon their state law claims (Counts XIV, XV, and XVI).  Pursuant to this court's order entered that same day, the parties were instructed to file supplemental briefs discussing the statute of limitations on Plaintiff's Section 1983 Due Process and Liberty claims and whether Plaintiffs' well-pleaded complaint stated a claim for deprivation of liberty under Section 1983.  (*See* Doc. #63).  Defendants filed their brief on February 8, 2013.  (Doc. #65).  Plaintiffs did not file a brief in accordance with

---

[4]The court has already considered these arguments in its order denying Defendant's Motion to Strike (Doc. #60) and does not re-address them here.

the court's order.  However, chamber's staff received a phone call from Plaintiffs' counsel on February 15, 2013, indicating that Plaintiffs were voluntarily abandoning all Section 1983 claims (Counts VI, VII, VIII, IX, XI, and XII).  Therefore, the only claims remaining to be decided on this motion to dismiss are:  (1) Plaintiff Rebecca Hicks's Title VII claim for racial discrimination; (2) Plaintiff Rebecca Hicks's Title VII claim for pregnancy discrimination; (3) Plaintiff Leonard Hicks's Title VII claim for a racially hostile work environment; (4) Plaintiff Leonard Hicks's Title VII claim for racial discrimination; (5) Plaintiff Leonard Hicks's Title VII retaliation claim; (6) Plaintiff Leonard Hicks's Section 1981 claim for race and color discrimination; and (7) Plaintiff Leonard Hicks's Title VII claim for retaliatory termination.

Before turning to the merits of Defendant's Motion to Dismiss, the court addresses a preliminary matter regarding the parties non-compliance with the page limits set forth in the Initial Order (Doc. #5) regarding non-summary judgment motions.  Exhibit B is titled "Non-Summary Judgment Motion Scheduling Order" and establishes in detail the briefing requirements for such motions.  According to Exhibit B, the text of the parties initial and responsive briefs should not have exceeded twenty-five (25) pages and Defendant's reply brief should not have exceeded ten (10) pages.  Both Plaintiffs and Defendant filed briefs exceeding the page limitations.  The parties are reminded to familiarize themselves with the Initial Order and all briefing requirements set forth therein.  The court expects all future briefing in this matter to comply with the court's rules unless leave otherwise is obtained.  Failure to brief future motions in accordance with Initial Order may result in the court striking the document.

### III.    STANDARD OF REVIEW

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Having said that, the complaint must include enough facts "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.  In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim.  *Twombly*, 550 U.S. at 556.

The Supreme Court has recently identified "two working principles" for a district court to use in applying the facial plausibility standard.  First, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to

accept as true legal conclusions when they are "couched as [] factual allegation[s]." *Iqbal*, 129 S. Ct. at 1950. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Application of the facial plausibility standard involves two steps. Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; and under prong two, the court must proceed to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Id.*

## IV.    DISCUSSION

Defendant's Motion to Dismiss begins by listing, in numbered paragraphs, statements that are generally and most appropriately construed as affirmative defenses. (*See* Doc. #43). Of the remaining claims, the brief supporting Defendant's Motion to Dismiss does not specifically refer to or seek dismissal of the following claims: (1) Plaintiff Rebecca Hicks's Title VII claim for racial discrimination (Count I); (2) Plaintiff Rebecca Hicks's Title VII claim for pregnancy discrimination (Count II); (3) Plaintiff Leonard Hicks's Title VII claim for racial discrimination (Count IV); (4) Plaintiff Leonard Hicks's Title VII claim for retaliatory termination (Count XIII); or (5) Plaintiff Leonard Hicks's Section 1981 claim for racial discrimination (Count XI). Because Defendant does not argue for dismissal of these claims and because the court finds that Plaintiffs' well-pleaded complaint states a claim for these counts to relief, these claims will not be dismissed.

Of the remaining claims, Defendant argues that the following claims should be dismissed: (1) Plaintiff Leonard Hicks's Title VII Claim for a Racially Hostile Work Environment (Count III);

(2) Plaintiff Leonard Hicks's Title VII claim for discriminatory retaliation (Count V); and (3) Plaintiffs' claim for punitive damages. (*See* Doc. #43-1). Each of these arguments is addressed in turn.

### A.   Count III: Leonard Hicks's Title VII Claim for a Racially Hostile Work Environment

Defendant asserts that Plaintiff Leonard Hicks's claim for a racially hostile work environment is time barred because his EEOC charge made no reference to a racially hostile work environment. Before filing suit, a plaintiff alleging claims under Title VII must file a timely charge of discrimination with the EEOC and exhaust the remedies provided by the EEOC. *See e.g.*, *Lewis v. City of Chicago, Ill.*, 130 S. Ct. 2191, 2196-97 (2010); *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000). "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Alexander*, 207 F.3d at 1332. The Eleventh Circuit has stated that "[a]s long as allegations in the judicial complaint and proof are 'reasonably related' to charges in the administrative filing and 'no material differences' between them exists, the court will entertain them." *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989). "Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate." *Id.*

The starting point of determining the permissible scope of a judicial complaint is the administrative charge and investigation. *Alexander*, 207 F.3d at 1332. Thus, the court must first

12

examine Plaintiff Leonard Hicks's EEOC charge.[5]  Plaintiff Leonard Hicks marked the box for "race" discrimination and did not mark any other box.  Plaintiff Leonard Hicks also provided a typewritten narrative statement with his charge.  This statement makes no reference to (or any allegation about) a racially hostile work environment.  However, the narrative concluded by stating that Plaintiff Leonard Hicks's bases his claim upon his belief that the City of Alabaster "subjected [him] to harassment and terminated [him] because of his race and/or [his] association with someone of a different race."  (Doc. #4-2).

Although supporting facts are lacking from his EEOC charge, there is no mistake that charge alleges that Defendant subjected him to "harassment."  Moreover, in Count III of his Judicial Complaint, Plaintiff Leonard Hicks alleges that his "supervisors, including Oliver and his Deputy Chief, Curtis Rigney, as well as the municipal human resources department, permitted a racially hostile work environment to exist, nurtured and promoted the same, and took no corrective action following complaints by the Hicks of racial intolerance and harassment by Oliver and other employees of the Alabaster Police Department."  (Doc. #39 at ¶109.a.).  Plaintiff Leonard Hicks also alleges that "Defendant Oliver on various occasions called [him] 'boy' and routinely used the 'N' word in the presence of employees of the Police Department."  (Doc. #39 at ¶109.b.).  Plaintiff Leonard Hicks further alleges that Caucasian officers "routinely told racial derogatory jokes and sent

---

[5]Defendant attached Plaintiff Leonard Hicks's EEOC charge as an exhibit to its original motion to dismiss. (*See* Doc. #4-2).  Generally, the court is limited to the face of the complaint in deciding a Rule 12(b) motion to dismiss.  However, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents as part of the pleading for purposes of Rule 12(b)(6) dismissal, and defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."  *Brooks v. Blue Cross Blue Shield, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).  Alternatively, when considering a motion to dismiss, the court may take judicial notice of the contents of relevant public records, which include EEOC Charges and Right to Sue Letters.  *Brooks v. CSX Transp.*, Inc., No. 3:09-cv-397-J-32HTS, 2009 WL 3208708, at *5 n.6 (M.D. Fla. Sept. 29, 2009), citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999); *Rogan v. Giant Eagle*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000).

13

racially derogatory emails to each other" and that Plaintiff Leonard Hicks was aware of this activity. (Doc. #39 at ¶109.g).   These specific allegations serve to "amplify, clarify, or more clearly focus" his earlier EEOC charge stating that the City of Alabaster subjected him to harassment.  *See Wu*, 863 F.2d at 1547.  Therefore, the court will not dismiss Plaintiff Leonard Hicks's racially hostile work environment claim at the pleading stage.

**B.     Count V: Plaintiff Leonard Hicks's Title VII Claim for Retaliation**

Defendant asserts that Plaintiff Leonard Hicks fails to state a claim for retaliation.  Plaintiffs did not respond to this argument in their opposition to Defendant's Motion to Dismiss. Nevertheless, the court briefly addresses why this claim is not due to be dismissed.

To establish a *prima facie* claim of retaliation under Title VII, Plaintiff Leonard Hicks must show "(1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relation between the two events." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (internal quotations omitted). Defendant argues that Plaintiff Leonard Hicks's claim for retaliation under Title VII fails because he cannot establish the first element of a *prima facie* case.  Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a); *see also Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).   Therefore, "statutorily protected expression" refers to an expression in opposition to some practice made unlawful by Title VII.  *See id*. Defendant claims that the facts supporting the retaliation claim are based on Plaintiff Leonard Hicks's complaints about the police department's treatment of Hispanics and other minority

14

residents.  If these were the only facts supporting the retaliation claim, it is doubtful that Plaintiff Leonard Hicks could establish that he engaged in statutorily protected activity.  Complaints about the Alabaster Police Department's alleged treatment of minority residents during traffic stops or investigations do not involve conduct made illegal under Title VII.  However, Plaintiff Leonard Hicks also claims he was retaliated against when Defendant Oliver "gave hiring officials of neighboring police departments to which Hicks had applied for employment unsolicited negative references regarding Hicks."  (Doc. #39 at ¶139).

Although Plaintiff Leonard Hicks's Title VII retaliation claim could certainly have been more clearly asserted, the court finds that it survives Rule 12(b)(6) scrutiny.  It is plausible that from the face of the Second Amended Complaint, Defendant Oliver retaliated against Plaintiff Leonard Hicks by giving negative employment references for his having filing a charge of discrimination with the EEOC.  It is also plausible that a reasonable employee would not file charge of discrimination if the employee knew his former supervisor would provide unsolicited negative references to future employers.  These allegations, though not stated precisely, satisfy the pleading requirements.  *See Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) ("[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (internal citations omitted).  Thus, the court will not dismiss this claim at the pleading stage.

### C.    Plaintiffs' Prayer For Punitive Damages is Barred by Law

Defendant asserts Plaintiffs' claim for punitive damages is barred by federal and state law.  Only certain Title VII and Section 1981 claims will remain against Defendant.  Therefore, the court

15

analyzes this argument against that backdrop.  Governmental entities are expressly exempt from punitive damages under Title VII.  *See* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision)...").  Thus, Defendant cannot be held liable for punitive damages under Title VII.   As such, Plaintiffs' prayer for punitive damages against Defendant under this statute is due to be dismissed.

Additionally, even if Plaintiffs prevailed on the remaining Section 1981 claim, Defendant could not be liable punitive damages.  *See Walters v. City of Atlanta*, 803 F.2d 1135, 1148 (11th Cir. 1986) (affirming trial court's decision instructing jury that it could not award punitive damages on a Section 1981 claim against the municipality).  Thus, Plaintiffs' prayer for punitive damages arising out of their Section 1981 claim must be dismissed.

## V.   CONCLUSION

After careful review, and for the reasons stated above, Defendant's Motion to Dismiss (Doc. #43) is due to be granted in part and denied in part.  The following of Plaintiffs' claims are due to be dismissed with prejudice as to Defendant City of Alabaster:

- Plaintiff Leonard Hicks's Section 1983 claim for deprivation of property (Count VI);
- Plaintiff Leonard Hicks's Section 1983 claim for deprivation of liberty (Count VII);
- Plaintiff Rebecca Hicks's Section 1983 claim for deprivation of property (Count VIII);
- Plaintiff Rebecca Hicks's Section 1983 claim for deprivation of liberty (Count IX);
- Plaintiff Leonard Hicks's Section 1983 claim for right to equal protection (Count XI);
- Plaintiff Rebecca Hicks's Section 1983 claim for right to equal protection (Count XII);
- Plaintiffs Rebecca and Leonard Hicks's claim for intentional infliction of emotional distress (Count XIV);
- Plaintiffs Rebecca and Leonard Hicks's claim for breach of duty of good faith and fair dealing (Count XV);

16

- Plaintiffs Rebecca and Leonard Hicks's claim for fraud under Alabama Code § 6-5-101 and Alabama Code § 6-5-102 (Count XVI); and
- Plaintiffs Rebecca and Leonard Hick's claims for punitive damages.

Plaintiffs' remaining claims against Defendant are as follows:

- Plaintiff Rebecca Hicks's Title VII claim for racial discrimination (Count I);
- Plaintiff Rebecca Hicks's Title VII claim for pregnancy discrimination (Count II);
- Plaintiff Leonard Hicks's Title VII claim for a racially hostile work environment (Count III);
- Plaintiff Leonard Hicks's Title VII claim for racial discrimination (Count IV);
- Plaintiff Leonard Hicks's Title VII retaliation claim (Count V);
- Plaintiff Leonard Hicks's Title VII claim for retaliatory termination (Count XIII); and
- Plaintiff Leonard Hicks's 42 U.S.C. § 1981 claim for racial discrimination (Count IX).

A separate order consistent with this memorandum opinion will be issued.

**DONE** and **ORDERED** this ___11th___ day of March, 2013.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

17