IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LEONARD CHARLES HICKS, JR., and REBECCA DIANE WRIGHT HICKS, | }<br>}<br>}<br>} |
| Plaintiffs, | }<br>} |
| v. | } Case No.: 2:11-CV-4107-RDP |
| CITY OF ALABASTER, ALABAMA and STANLEY OLIVER, SR., | }<br>}<br>}<br>} |
| Defendants. | } |

**MEMORANDUM OPINION**

Before the court is Defendant Stanley Oliver's ("Defendant" or "Oliver") Motion to Dismiss (Doc. #46), filed on November 11, 2012.[1] The Motion (Doc. #46) has been fully briefed. (Docs. #44, 46-1, 51, 49). For the reasons discussed below, Defendant's Motion to Dismiss (Doc. #43) is due to be granted in part and denied in part.

**I.   BACKGROUND AND RELEVANT FACTS**[2]

Plaintiffs initiated this lawsuit on December 6, 2011 by filing a Complaint against the City of Alabaster alleging various claims under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, *et seq.*, including racial discrimination, racially hostile work environment, and retaliation. (Doc. #1). On March 29, 2012, the court dismissed Plaintiffs action with prejudice after Plaintiffs failed to respond to the City of Alabaster's Motion to Dismiss. (Doc. #6). One day later,

---

[1]To be clear, this memorandum opinion only addresses Defendant Oliver's Motion to Dismiss (Doc. #46). Any findings or conclusions reached herein do not apply to Defendant City of Alabaster. The City of Alabaster filed a separate Motion to Dismiss and was addressed in a separate memorandum opinion and order.

[2]The relevant facts are nearly identical to those contained in the court's memorandum opinion addressing Defendant City of Alabaster's Motion to Dismiss. (Doc. #73). However, they are repeated here for clarity and consistency.

Plaintiffs filed a Motion to Reinstate (Doc. #7), and on April 2, 2012, the court granted that motion. (Doc. #9). On April 8, 2012, Plaintiffs responded to the City of Alabaster's Motion to Dismiss (Doc. #10), the City filed a reply (Doc. #11), and Plaintiffs filed a Motion for Judgement on the Pleadings (Doc. #12). On April 25, 2012, the court denied Plaintiffs' Motion for Judgment on the Pleadings. (Doc. #14). According to the Scheduling Order (Doc. #19) entered on May 22, 2012, Plaintiffs were to amend their pleadings on or before July 25, 2012. On July 27, Plaintiff's filed a Motion for Leave to Amend Complaint. (Doc. #22). On July 26, 2012, the court granted Plaintiffs' Motion (Doc. #22) and also terminated the City of Alabaster's Motion to Dismiss (Doc. #4) as the Amended Complaint would serve as the new operative pleading. (Doc. #23).

Plaintiffs filed an Amended Complaint on July 27, 2012. (Doc. #24). Although not reflected in the caption, Plaintiffs added Alabaster Police Chief Stanley Oliver ("Oliver") as a Defendant. (*See* Doc. #24). The City of Alabaster filed another Motion to Dismiss (Doc. #25) and Motion to Strike (Doc. #26) on August 10, 2012. Also on August 10, 2012, the court issued an order directing Plaintiffs to show cause why the action should not be dismissed against Defendant Oliver for failure to perfect service. (Doc. #28). Plaintiffs failed to show cause within the time frame set by the court but subsequently filed a response (Doc. #34) on September 4, 2012, after a call from a member of chambers staff.

On September 11, 2012, Defendant Oliver filed a Motion to Strike Plaintiffs' Statement Regarding Service of Process as untimely. (Doc. #35). This same day, Plaintiffs filed a Motion for Leave to Perfect Service on Defendant Oliver. (Doc. #36). After a telephone conference on September 12, 2012, the court granted Plaintiffs' Motion (Doc. #36) and also instructed Plaintiffs to file a Second Amended Complaint to correct "shot gun" pleading deficiencies. (Doc. #38).

Because the Second Amended Complaint would serve as the new operative pleading, the court also rendered moot and denied without prejudice the City of Alabaster's Motion to Dismiss (Doc. #25) and Motion to Strike. (Doc. #26).

On October 1, 2012, Plaintiffs filed a Second Amended Complaint, which is the subject of this Motion to Dismiss. (Doc. #46).[3] Plaintiffs' Second Amended Complaint asserts claims against Defendant City of Alabaster and Defendant Oliver. Plaintiffs are a biracial couple and parents to one son. (Doc. #39 at ¶ 22). They met while employed with the Alabaster Police Department. (*Id.*). Plaintiff Rebecca Hicks began her employment as a dispatcher on July 1, 2006. (*Id.*). Plaintiff Leonard Hicks began his employment as a patrol officer in February 2006. (*Id.*). During his employment with the Alabaster Police Department, Plaintiff Leonard Hicks sought training and educational opportunities that were routinely provided to Caucasian employees. (*Id.* at ¶86). Oliver denied these requests without providing a reason. (*Id.* at ¶87).

On September 23, 2009, Oliver met with Plaintiffs in his office and asked them whether they had been involved in a personal relationship while employed with the Alabaster Police Department. (*Id.* at ¶ 25). Plaintiffs admitted they had been involved in a personal relationship and that Plaintiff

---

[3] A review of Plaintiffs' Second Amended Complaint demonstrates that Plaintiffs did not entirely comply with the court's September 12, 2012 order to correct "shot-gun" pleading deficiencies. It is still not entirely clear from Plaintiffs' Second Amended Complaint which counts to relief are plead against a specific Defendant. Further, Plaintiffs' Second Amended Complaint contains new factual allegations and new counts to relief. Specifically, Plaintiffs added claims against Defendant City of Alabaster and Defendant Oliver for intentional infliction of emotional distress, breach of duty of good fait and fair dealing, and fraud. Moreover, Plaintiffs assert a number of factual allegations that are simply irrelevant to their claims. Although Plaintiffs' Second Amended Complaint does not comply entirely with the court's September 12, 2012 order and although it contains new factual allegations and claims filed without leave and outside the time for amendment of the pleadings, the court addresses below whether Plaintiff's claims satisfy the pleading standards and does so in an attempt to ensure that this lawsuit, originally filed in December 2011, proceeds more expeditiously than it has to this point. The preferred course would have been for Plaintiffs to have sought leave before adding factual allegations and claims; however, had Plaintiffs done so, the court likely would have granted such a motion. Under Federal Rule of Civil Procedure 15(a), leave to amend is freely given when justice requires. *See* Fed. R. Civ. P. 15(a).

Rebecca Hicks was pregnant and had applied for maternity leave. (*Id.* at ¶ 26). Immediately after this meeting, Oliver told Plaintiff Rebecca Hicks that City Attorney, Greg Morris ("Morris") had told Oliver to terminate her immediately. (*Id.* at ¶27). Plaintiff Rebecca Hicks then believed she could tender a resignation letter after Oliver threatened loss of insurance coverage for her and her child. (*Id.* at ¶28). Oliver also told Plaintiff Leonard Hicks that Morris had instructed Oliver to terminate him immediately, either by firing or forced resignation. (*Id.* at ¶30). Oliver discussed the Standard Operating Procedures ("SOP") Manual with Plaintiffs. (*Id.* at ¶28). The SOP Manual contained a non-fraternization policy and Oliver told Plaintiffs he would be in contact with them at a later time after speaking with Morris. (*Id.*).

On September 24, 2009, Plaintiffs submitted letters of resignation according to instructions given by Oliver, and on September 25, 2009, Plaintiff Leonard Hicks's position with the Alabaster Police Department was posted on its website. (*Id.* at ¶32). Plaintiffs allege that they withdrew their letters of resignation after learning other similarly situated Caucasian employees were treated differently than they. (*Id.* at ¶33). On October 7, 2009, Plaintiffs attended a meeting with Morris and Clark Boyd ("Boyd"), the City's Human Resource Director. (*Id.* at ¶34). At the meeting, Morris told Plaintiffs that they "had gotten [themselves] into this mess" and that they should submit a fair proposal to resolve the issue. (*Id.* at ¶35). During the meeting, Morris referred to Plaintiffs as "kids" until they objected. (*Id.* at ¶36). Plaintiffs allege other similarly situated employees were not subject to this type of treatment during conversations with Morris. (*Id.*). Plaintiffs also allege that prior to September 23, 2009, there were at least two other instances where Caucasian employees of the Alabaster Police Department established personal relationships and were married while employed. (*Id.* at ¶70). In one instance, Plaintiffs allege no disciplinary action was taken, and in the other

4

Plaintiffs claim a mild reprimand was given to one of the two employees. (*Id.* at ¶73).

Morris told Plaintiffs that he thought a good proposal would be for Plaintiff Rebecca Hicks to resign following her maternity leave and for Plaintiff Leonard Hicks to continue his employment on active duty with the Alabaster Police Department. (*Id.* at ¶37). Plaintiff Rebecca Hicks told Morris that proposal had not been suggested by Oliver but that if Morris believed it was acceptable, Plaintiffs would submit such a proposal immediately. (*Id.* at ¶38). During the October 7, 2009 meeting, Morris discouraged Plaintiffs from consulting with an attorney and directed them to wait until the following Tuesday to submit the suggested proposal. (*Id.* at ¶¶ 40, 41).

Following the meeting, Boyd called Plaintiffs and told them Morris wanted the proposal submitted immediately. (*Id.* at ¶42). Plaintiffs returned to Boyd's office and prepared a written proposal to Boyd that provided that one of Plaintiffs would resign at the end of Plaintiff Rebecca Hicks's maternity leave and one Plaintiff would continue his or her employment. (*Id.*). Several hours later, Plaintiff Leonard Hicks received a letter from Oliver stating he had been placed on administrative leave for five days pending an investigation of his alleged violation of the City of Alabaster's sexual harassment and non-fraternization policies. (*Id.* at ¶44).

On October 13, 2009, Boyd requested a meeting with Plaintiffs, Lieutenant Jeff Anthony ("Anthony"), Morris, and Morris's partner, Jeff Brumlow ("Brumlow"), the City of Alabaster Prosecutor. (*Id.* at ¶50). Boyd directed Plaintiffs to report to his office immediately and without counsel. (*Id.* at ¶52). Plaintiff Leonard Hicks was questioned for an hour and a half about his relationship with Plaintiff Rebecca Hicks. (*Id.* at ¶54). Plaintiff Rebecca Hicks was then questioned. (*Id.* at ¶58). Morris told Plaintiffs he had digitally recorded the meeting. (*Id.* at ¶59). Plaintiffs allege other similarly situated Caucasian employees were not subjected to such treatment under

5

similar circumstances. (*Id.* at ¶56). Plaintiffs also allege similarly situated Caucasian employees were not subjected to the same internal affairs investigation. (*Id.* at ¶57).

On October 16, 2009, Boyd called Plaintiff Leonard Hicks and told him there were letters from Oliver to Plaintiffs at Boyd's office. (*Id.* at ¶60). The letters informed Plaintiffs that based on the internal affairs investigation, their requests to withdraw their letters of resignation were denied. (*Id.* at ¶61). Following his termination, Plaintiff Leonard Hicks went to Boyd's office to return equipment and other items issued by the Alabaster Police Department. (*Id.* at ¶62). At that time, Plaintiff Leonard Hicks and Boyd discussed his right to appeal the decision to terminate his employment. (*Id.* at ¶63). Boyd told Plaintiff Leonard Hicks he could appeal the decision and also told him what to include in the document. (*Id.* at ¶64). Plaintiff Leonard Hicks typed the appeal notice in Boyd's office and submitted it as Boyd had instructed. (*Id.* at ¶65). Boyd told Plaintiff Leonard Hicks he would process his appeal and would contact him in the near future. (*Id.* at ¶66). Plaintiff Leonard Hicks contacted Boyd several weeks later and Boyd told him his appeal had been denied. (*Id.* at ¶¶67, 68). Plaintiff Leonard Hicks received no written notification regarding his appeal. (*Id.* at ¶69).

At some point following Plaintiffs' terminations, Anthony sent a memorandum to all employees notifying them that Plaintiffs were no longer employed with the Alabaster Police Department. (*Id.* at ¶92). This memorandum instructed Alabaster Police Department employees "not to have anything to do with Plaintiffs" and in the event any employee did come into contact with Plaintiffs to report and record any conversation. (*Id.* at ¶93).

Plaintiffs assert the following claims against Oliver in their Second Amended Complaint: (1) Plaintiff Rebecca Hicks's Title VII claim for racial discrimination; (2) Plaintiff Rebecca Hicks's

Title VII claim for pregnancy discrimination; (3) Plaintiff Leonard Hicks's Title VII claim for a racially hostile work environment; (4) Plaintiff Leonard Hicks's Title VII claim for racial discrimination; (5) Plaintiff Leonard Hicks's Title VII retaliation claim; (6) Leonard Hicks Section 1983 claim for deprivation of property; (7) Plaintiff Leonard Hicks's Section 1983 claim for deprivation of liberty; (8) Plaintiff Rebecca Hicks's Section 1983 claim for deprivation of property; (9) Plaintiff Rebecca Hicks's Section 1983 claim for deprivation of liberty; (10) Plaintiff Leonard Hicks's Section 1981 claim for race and color discrimination; (11) Plaintiff Leonard Hicks's Section 1983 claim for right to equal protection; (12) Plaintiff Rebecca Hicks's Section 1983 claim for right to equal protection; (13) Plaintiff Leonard Hicks's Title VII claim for retaliatory termination; (14) Plaintiffs Rebecca and Leonard Hicks's claim for intentional infliction of emotional distress; (15) Plaintiffs Rebecca and Leonard Hicks's claim for breach of duty of good faith and fair dealing; (16) Plaintiffs Rebecca and Leonard Hicks's claim for fraud under Alabama Code § 6-5-101 and Alabama Code § 6-5-102.  Plaintiffs claim they have exhausted the administrative remedies for their Title VII claims.  (Doc. #39 at ¶¶9-13).  Plaintiff Leonard Hicks filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 20, 2009.  (*See* Doc. #4-2). Plaintiff Rebecca Hicks filed a charge of discrimination with the EEOC on March 17, 2010. (*See* Doc. #4-3).  Plaintiffs received right to sue letters from the EEOC on October 7, 2011.  (Doc. #39 at ¶12).

In his Motion to Dismiss (Doc. #46), Defendant asserts that Plaintiffs' Section 1983 Claims (Counts VI, VII, VIII, IX, XI, and XII), as well as their state law claims for intentional infliction of emotion distress (Count XVI) and fraud (Count XV) are barred by the two year statute of limitations. Oliver also claims that Plaintiffs' Section 1983 due process claims are also due to be dismissed

7

because Plaintiffs had adequate post deprivation state law remedies available. Defendant argues that Plaintiffs' Title VII claims (Counts I, II, III, IV, V, and XII) are due to be dismissed because (1) Plaintiffs failed to exhaust administrative remedies, (2) they are time barred, and (3) because officers or employees in their individual capacities cannot be liable under Title VII. Defendant also states that Plaintiffs claims for intentional infliction of emotional distress and breach of duty of good faith and fair dealing are due to be dismissed because they fail to state a claim upon which relief can be granted. Plaintiffs filed a brief in opposition to Defendant's Motion to Dismiss (Doc. #49) on November 12, 2012. Plaintiffs assert the statute of limitations should be equitably tolled. They also submit that they were not required to exhaust available state law remedies. Plaintiffs did not address Defendant's arguments regarding their Title VII claims and did not substantively respond to Defendant's arguments that their state law claims for intentional infliction of emotion distress and breach of good faith and fair dealing fail to state claim. Defendant filed a reply on November 15, 2012 restating his grounds for dismissal.

During a status conference with the parties on January 31, 2013, Plaintiffs agreed to abandon their state law claims (Counts XIV, XV, and XVI). Pursuant to this court's order entered that same day, the parties were instructed to file supplemental briefs discussing the statute of limitations on Plaintiff's Section 1983 Due Process and Liberty claims and whether Plaintiffs' well-pleaded complaint stated a claim for deprivation of liberty under Section 1983. (See Doc. #63). Defendants filed their brief on February 8, 2013. Plaintiffs did not file a brief in accordance with the court's order. However, chamber's staff received a phone call from Plaintiff's counsel on February 15, 2013 indicating that Plaintiffs were voluntarily abandoning all Section 1983 claims (Counts VI, VII, VIII, IX, XI, and XII). Therefore, the only claims remaining to be decided on this motion to dismiss are:

(1) Plaintiff Rebecca Hicks's Title VII claim for racial discrimination; (2) Plaintiff Rebecca Hicks's Title VII claim for pregnancy discrimination; (3) Plaintiff Leonard Hicks's Title VII claim for a racially hostile work environment; (4) Plaintiff Leonard Hicks's Title VII claim for racial discrimination; (5) Plaintiff Leonard Hicks's Title VII retaliation claim; (6) Plaintiff Leonard Hicks's Section 1981 claim for race and color discrimination; and (7) Plaintiff Leonard Hicks's Title VII claim for retaliatory termination.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Having said that, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate

"more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

The Supreme Court has recently identified "two working principles" for a district court to use in applying the facial plausibility standard. First, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions when they are "couched as [] factual allegation[s]." *Iqbal*, 129 S. Ct. at 1950. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Application of the facial plausibility standard involves two steps. Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; and under prong two, the court must proceed to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Id.*

### III. DISCUSSION

#### A. Plaintiffs' Title VII Claims Against Defendant (Counts I, II, III, IV, V, XIII)

##### 1. Individual Capacity Claims

The Eleventh Circuit has long recognized that individual capacity suits under Title VII are inappropriate. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1981). "The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." *Id.* (citing *Clanton v. Orleans Parish Sch. Bd.*, 649 F.2d 1084, 1099 & n.

19 (5th Cir. 1981) (emphasis in original). Thus, to the extent Plaintiffs' Second Amended Complaint asserts Title VII claims against Defendant in his individual capacity, these claims are due to be dismissed. The same is true for Plaintiffs' Title VII claims against Defendant in his official capacity as they are redundant.

### 2. Official Capacity Claims

"[W]hile official-capacity suits against an employer's agents are proper, such suits are unnecessary where a plaintiff has also sued the employer." *Moss v. W & A Cleaners*, 111 F. Supp. 2d 1881, 1187 (M.D. Ala. 2000); see also Kentucky v. Graham, 473 U.S. 159, 165 (1985) (Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"). In other words, if a Title VII plaintiff names his or her employer as a defendant, any of the employer's agents named in the suit may be dismissed from the action. *See Marshall v. Miller*, 873 F. Supp. 628, 632 (M.D. Fla. 1995). Because Plaintiffs have named the City of Alabaster as a defendant, the court finds that Plaintiffs' Title VII claims (Counts I, II, III, IV, V, XIII) against Defendant Oliver in his official capacity is redundant and unnecessary. Accordingly, these claims are due to be dismissed.

### B. Plaintiff Leonard Hicks's Section 1981 Claim for Racial Discrimination

Defendant's brief in support of his Motion to Dismiss does not specifically address this claim. Nevertheless, the court briefly explains why it is not due to be dismissed. Unlike a Title VII claim, a Section 1981 claim may be brought against an individual supervisor. *See, e.g., Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1176 (11th Cir. 2003). "[A] claim for individual liability under Section 1981 requires an affirmative showing linking the individual defendant with the discriminatory action." *Page v. Winn-Dixie Montgomery, Inc.*, 702 F. Supp. 2d 1334, 1356-57 (S.

D. Ala. 2010) (internal citations omitted). Plaintiff Leonard Hicks alleges that Defendant denied him opportunity for promotion and advancement based upon his race and color. (Doc. #39, pg. 48). At the pleading stage, the court is satisfied, that these allegations could support a claim of individual Section 1981 liability. Therefore, because Defendant did not address this claim in his brief supporting his motion to dismiss and because the court finds it state a claim, Plaintiff Leonard Hicks's Section 1981 claim for racial discrimination is not due to be dismissed.

## IV.     CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (Doc. #46) is due to be granted in part and denied in part. Moreover, Defendant's Motion to Strike (Doc. #52) is rendered moot.[4] The following of Plaintiffs' claims are due to be dismissed with prejudice as to Defendant Oliver:

- Plaintiff Rebecca Hicks's Title VII claim for racial discrimination (Count I);
- Plaintiff Rebecca Hicks's Title VII claim for pregnancy discrimination (Count II);
- Plaintiff Leonard Hicks's Title VII claim for a racially hostile work environment (Count III);
- Plaintiff Leonard Hicks's Title VII claim for racial discrimination (Count IV);
- Plaintiff Leonard Hicks's Title VII retaliation claim (Count V);
- Plaintiff Leonard Hicks's Section 1983 claim for deprivation of property (Count VI);
- Plaintiff Leonard Hicks's Section 1983 claim for deprivation of liberty (Count VII);
- Plaintiff Rebecca Hicks's Section 1983 claim for deprivation of property (Count VIII);
- Plaintiff Rebecca Hicks's Section 1983 claim for deprivation of liberty (Count IX);
- Plaintiff Leonard Hicks's Section 1983 claim for right to equal protection (Count XI);
- Plaintiff Rebecca Hicks's Section 1983 claim for right to equal protection (Count XII);
- Plaintiff Leonard Hicks's Title VII claim for retaliatory termination (Count XIII);
- Plaintiffs Rebecca and Leonard Hicks's claim for intentional infliction of emotional distress (Count XIV);

---

[4]Defendant filed a Motion to Strike (Doc. #52) on November 15, 2012 asking the court to strike eight exhibits Plaintiffs attached to their Opposition to Defendant's Motion to Dismiss (Doc. #49). These exhibits relate to Plaintiffs' Section 1983 claims, which Plaintiffs have voluntarily abandoned. *See supra* page 8. Therefore, Defendant's Motion to Strike (Doc. #52) is **MOOT**.

- Plaintiffs Rebecca and Leonard Hicks's claim for breach of duty of good faith and fair dealing (Count XV); and
- Plaintiffs Rebecca and Leonard Hicks's claim for fraud under Alabama Code § 6-5-101 and Alabama Code § 6-5-102 (Count XVI).

Plaintiffs' remaining claim against Defendant is as follows:

- Plaintiff Leonard Hicks's 42 U.S.C. § 1981 claim for racial discrimination (Count IX).

A separate order consistent with this memorandum opinion will be issued.

**DONE** and **ORDERED** this   12th   day of March, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE